Halpern, J.
(concurring). I concur in the opinion of Justice Imrie but I would add a word to indicate how the controversy here presented strikes me.
As I see it, the petitioner took the position before the Board of Regents that its motion picture would be of substantial educational value in combating the narcotic habit, particularly among adolescents. On the other hand, the board had before it a considerable body of opinion to the effect that any publicity about narcotics aimed at adolescents, no matter how well-intentioned, would stimulate interest in the subject and would do more harm than good. The petitioner maintained that the portrayal of the disastrous results of the drug habit would have a powerful deterrent effect upon viewers of the picture. Taking a contrary view, the Director of the Motion Picture Division submitted quotations from official and unofficial opinions, opposing “ anti-narcotic education and propaganda ” on the ground that they ‘ ‘ would tend to encourage curiosity, experimentation and addiction ”. There was thus presented to the board a difference of opinion as to whether discussion or silence was the best way to deal with the problem.
Confronted with this conflict of opinion, the Board of Regents should have applied the fundamental principle of freedom of expression and should have allowed each side to pursue its own philosophy. The Board of Regents had no power, under our constitutional concepts, to suppress the motion picture merely because it believed that it dealt with a social problem in the wrong way. The board had no right to refuse to license the petitioner’s motion picture on the ground that, in its opinion, it represented an unwise or objectionable method of attempting to fight the narcotic evil. Motion pictures are entitled to the protection of the constitutional guarantees of freedom of expression (Joseph Burstyn, Inc., v. Wilson, 343 U. S. 495). Freedom of expression is freedom alike for “ propaganda ” which we deplore and for “ education ” of which we approve.
The statute (Education Law, § 122) does not authorize the board in general terms to deny a license for any film which it believes to be inimical to the public interest. If the statute attempted to confer such authority, it would be plainly unconstitutional as granting to the board too vague and broad a power (Gelling v. Texas, 343 U. S. 960). The statute, so far as it is here relevant, authorizes the denial of a license only upon the ground that the film is “ immoral ” or that it is “ of such a character that its exhibition would tend to corrupt morals or incite to crime”.
*648 In Matter of Commercial Pictures Corp. v. Board of Regents (305 N. Y. 336), the Court of Appeals considered the question of the meaning of the words ‘ ‘ immoral ’ ’ and ‘‘ would tend to corrupt morals ” in the statute. Judge Froessel, writing the opinion which was designated as the opinion of the court, held that those words should be narrowly construed as referring only to films which were immoral in a sexual sense and, as so construed, he held the statute to be constitutional. Two Judges concurred in Judge Froessel’s opinion; a fourth Judge concurred in upholding the statute but he gave a broader meaning to the word “immoral”; two Judges dissented, holding the statute to be unconstitutional; only six judges in all participated in the decision. A majority of the court in favor of upholding the statute can thus be found only upon the basis of the narrow construction of the statute, limiting the word “ immoral ” to sexual immorality. We accordingly adopt that construction as binding upon us.
The validity of the board’s decision in this case must be determined by that standard. The board found that the film was “ ‘ immoral ’ (in the sense that it is vicious) ”. This finding was made prior to the decision of the Commercial Pictures case. The respondents’ counsel recognizes that this does not accord with the narrow construction of the word “ immoral ” in the Commercial Pictures case and he attempts to fit the board’s finding into the frame of that decision by arguing that the exhibition of the film is likely to lead to sexual immorality. This contention is far-fetched and wholly lacking in substantiality.
The additional finding by the board that the film tends to “ incite to crime ” is also without any substantial basis. The portrayal of the drug habit in the film is repulsive rather than inviting. Insofar as the film shows such criminal acts as selling narcotics, it is not any more likely to incite to crime than any film which portrays criminal acts.
The determination of the Board of Regents should be annulled.