317 P.2d 317

STATE of New Mexico, ex rel. John D. MURPHY, District Attorney, Second Judicial District, Appellee,

v.

Robert MORLEY, d/b/a San Jose Drive-In Theater, Appellant.

No. 6222.

Supreme Court of New Mexico.

Oct. 17, 1957.

Edward P. Chase, Craig Morton, Jr., Albuquerque, for appellant.

Fred M. Standley, Atty. Gen., Howard M. Rosenthal, Asst. Atty. Gen., for appellee.

LUJAN, Chief Justice.

This action was prosecuted under Section 40-34-15, N.M.S.A.1953 Compilation, providing for the abatement of a nuisance connected with "lewdness", "assignation" or "prostitution". The trial court found that the San Jose Drive-In Theater permitted the showing of indecent, obscene, and immoral pictures through use of the motion picture screen and advertising on the premises, and enjoined the management or "anyone acting in his place and stead" from maintaining or operating the theater in such a manner as to permit lewdness.

The case is interesting in view of the United States Supreme Court decisions relating to prior restraint of motion pictures and especially so in view of a recent decision by the New York Court of Appeals involving one of the pictures complained of in this case. In Excelsior Pictures Corp. v. Regents of University, 3 N.Y.2d 237, 165 N.Y.S.2d 42, 43, 144 N.E.2d 31, the court by a 4 to 3 decision held that the picture "Garden of Eden" was not obscene and stated:

> "There is nothing sexy or suggestive about it. * * * The nudists are shown as wholesome, happy people in family groups practicing their 'sincere

if misguided theory that clothing, when climate does not require it, is deleterious to mental health. * * * ' ".

Appellant charges several errors by the court in asking for dismissal as violation of due process of law under the First and Fourteenth Amendments to the Constitution of the United States, admission of opinion evidence, findings of fact and conclusion of law. In the view we take of the case it will be only necessary to consider this point two which is as follows:

"That under Section 40–34–1 through 21 N.M.S.A.1953 if applied to this defendant his constitutional guaranty of freedom of the press is violated contrary to the terms of Article II, Section 17 of the New Mexico Constitution and under the First and/or Fourteenth Amendments to the Constitution of the United States of America."

■ The action is not provided for in the New Mexico statute on which it is based as "lewdness" used in that statute does not apply to the showing of motion pictures in a regular business establishment.

The statute, N.M.S.A., 1953 Compilation, Section 40–34–15, provides as follows:

"For the purposes of this act (40–34–15 to 40–34–19), place shall mean any vehicle, building, erection or place, or any part thereof, or the ground itself; person shall mean any individual, corporation, association, partnership, trustee, lessee, agent or assignee; and nuisance shall mean any place upon which lewdness, assignation or prostitution is conducted, permitted, continued or exists and the personal property and content used in any manner in conjunction therewith."

This law was enacted in 1921, Ch. 90, Laws of 1921, and entitled "An Act Defining a Nuisance and Providing for the Abatement Thereof by Injunctive Proceedings". It will be noticed that the title of the act is for the abatement of "a" nuisance, singular. The act then provides that "nuisance" shall mean any place upon which lewdness, assignation or prostitution, is conducted, permitted, continued or exists. Appellee contends that "lewdness" is defined as including any indecent or obscene act and is to be construed as a separate offense from assignation or prostitution. This definition of lewdness is not found in the act in question, but is given under chapter 69, Laws of 1921, entitled "An Act for the Repression of Prostitution." The compiler, correctly we think, combined the two acts under Article 34 and included under the general subject of Criminal Offenses. . .

The appellee contends that by interpreting "lewdness" as any indecent or obscene act, that the statutes in question provide for the abatement of any obscene or indecent act, and that such lewdness is covered whether or not connected with assignation or prostitution. As such it would provide

for abatement of motion pictures and publication in the nature of pornographic literature. With this contention we cannot agree.

■ The words "lewdness", "assignation" or "prostitution" are used together throughout the two acts. The term "lewdness" is a broader and more general term than "assignation" or "prostitution". In People ex rel. Bradford v. Arcega, 49 Cal.App. 239, 193 P. 264, 266, the court said with regard to use of these terms:

"* * * Those terms bear a well-defined and well-understood meaning, and that a complaint charging in the general language of the act the nuisance at the suppression of which said act is directly aimed must of necessity be considered and construed, and may readily be understood to mean precisely what those terms were obviously intended to signify when they were inserted in the statute, viz. illicit sexual acts or conduct amounting to or involving lewdness. The latter word, it may be further added, has but one meaning in whatsoever connection it may be used, and it is more comprehensive than either the word 'prostitution' or the word 'assignation,' and may or may not include acts of prostitution and assignation".

■ There are several rules of statutory construction that aid in arriving at the meaning of a statute. One of these is set forth in 50 Am.Jur. 244, § 249, as follows:

"General and specific words in a statute which are associated together, and which are capable of an analogous meaning, take color from each other, so that the general words are restricted to a sense analogous to the less general. Under this rule, general terms in a statute may be regarded as limited by subsequent more specific terms."

See In re Stryker, 1899, 158 N.Y. 526, 53 N.E. 525, 70 Am.St.Rep. 489, holding that in a statute giving claim preference to the wages of employees, operatives, and laborers, that the general and more comprehensive term "Employees" is limited by the more specific words "operatives" and "Laborers". The rule that general words following specific ones are limited by the specific, or ejusdem generis, we applied in the case of Territory v. Jones, 1908, 14 N.M. 579, 99 P. 338, 20 L.R.A.,N.S., 239. Whatever name is given to the rule the fact seems to be that where the words are analogous or can be analogous in meaning the general term is somewhat limited by the specific ones. Thus, in Orr Ditch & Water Co. v. Justice Court of Reno Tp., 1947, 64 Nev. 138, 178 P.2d 558, the court construed a statute providing for the fencing of shafts, excavations and holes, and held that the general term "excavations" was limited to an opening or cavity in the earth similar to "shafts" or "holes". Because of the as-

sociation of the terms "lewdness", "assignation" or "prostitution" in the two acts of 1921, we are led to believe that the legislature intended "lewdness" to be limited to acts in connection with "assignation" or "prostitution".

Another reason for our determination that the statute is limited in effect to acts of lewdness in connection with assignation or prostitution is the rule that where two meanings are possible and one would make the statute void, the one is taken that would save the statute on the presumption that the legislature did not intend to legislate unconstitutionally. We said in Territory ex rel. Wade v. Ashenfelter, 1887, 4 N.M., John, 85, 12 P. 879:

"Where two constructions may be reasonably adopted, one of which will render an act wholly nugatory, and the other will make it effectual, the latter should be adopted."

In the case of Near v. State of Minnesota ex rel. Olson, 1931, 283 U.S. 697, 51 S.Ct. 625, 626, 75 L.Ed. 1357, a state statute was in question which provided for injunction procedure in the name of the state to "enjoin perpetually the persons committing or maintaining any such nuisance from further committing or maintaining it." The nuisance consisted among other things the publishing of "obscene, lewd and lascivious" matter. Laws Minn.1925, c. 285, § 1. The state court found the defendant guilty of acts constituting a "nuisance" under the statute and enjoined the defendants from "any publication whatsoever which is a malicious, scandalous or defamatory newspaper, as defined by law." The Supreme Court reversed on the ground that the statutory scheme constituted a prior restraint and an abridgment of the freedom of the press in violation of the First Amendment guarantees incorporated in the Fourteenth Amendment. The majority held that the statute amounted to "an effective censorship". It was noted that exceptions were made in exceptional cases for "obscene" publications.

In Joseph Burstyn, Inc., v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098, the court held that protection given in the First and Fourteenth Amendments to the United States Constitution applied to motion picture film as well as the press. It is clear that in the Burstyn case a statute providing for refusal of a license for showing of motion pictures considered to be "sacrilegious" is so vague and indefinite as to offend the due process of law clause of the Fourteenth Amendment. Authority to refuse a permit for showing film of such character as to be prejudicial to the best interests of the people is also unconstitutional for that reason (Gelling v. State of Texas, 1952, 343 U.S. 960, 72 S.Ct. 1002, 96 L.Ed. 1359. In like manner statutes providing for censorship on the basis of being "obscene", "immoral", or would "tend to corrupt morals"

have been tossed out (Superior Films, Inc., v. Department of Education, 1954, 346 U.S. 587, 74 S.Ct. 286, 98 L.Ed. 329; Commercial Pictures Corp. v. Board of Regents, 1953, 305 N.Y. 336, 113 N.E.2d 502; Holmby Productions v. Vaughn, 177 Kan. 728, 282 P.2d 412; Id., 350 U.S. 870, 76 S.Ct. 117, 100 L.Ed. 770; see 17 University of Pittsburgh Law Review 637; 20 Law & Contemporary Problems 648).

■ On the basis of the Near v. State of Minnesota ex rel. Olson case, the injunction provided in the New Mexico statute in question if applied to motion pictures would be in the nature of censorship and prior restraint. In addition the term "lewdness" if dissociated from "assignation or prostitution" would be too vague and indefinite to comply with the due process of law requirements of the Fourteenth Amendment as set forth in the above cases.

■ An additional reason why we are convinced that the term "lewdness" involved in the statute in question does not include acts not connected with assignation or prostitution is the apparent source of the act itself. A number of states have enacted laws preventing prostitution and these are usually referred to as "red light abatement laws". The California Act, No. 3634, enacted in 1913 (see Henning's General Laws of California, Vol. 5) West's Ann.Cal.Pen.Code, § 11225 et seq., is an example. The act defines "person" in section one as follows:

"The term 'person' as used in this act shall be deemed and held to mean and include individuals, corporations, associations, partnerships, trustees, lessees, agents and assignees". § 1

"Person" is defined in our act as follows:

"* * * person shall mean any individual, corporation, association, partnership, trustee, lessee, agent or assignee, * * *"

Similarly, "nuisance" is defined under the California act as "every building or place used for the purpose of lewdness, assignation or prostitution". § 2. An action for abatement of the building or place as a nuisance is also provided. In reading the "Red light abatement laws" for suppression of prostitution and comparing those provisions with chapter 69, Laws of 1921 and chapter 90, Laws of 1921, it is impossible to escape the conviction that the New Mexico statute providing for injunction and abatement of places of "lewdness, assignation or prostitution" were intended to supplement each other and constitute laws for the suppression of prostitution. In other words, chapter 90, Laws of 1921, was intended as "Red light abatement laws" similar to those of California and other states.

■ We are not convinced by appellee's statement that general equity powers included an injunction against nuisances to protect the public morals. He did not bring his action under that power. The statute in

question provided for the injunction, abatement of the nuisance, and forfeiture of premises on proof that "lewdness, assignation or prostitution" existed. The statute under which the complaint was drawn is criminal in nature and the complaint is an action in the nature of a criminal proceeding. See Board of Supervisors v. Simpson, 36 Cal.2d 671, 227 P.2d 14; Katz v. Commissioner of Immigration, 9 Cir., 245 F. 316. The action under general equity powers for protection of public morals is a civil action. Defendant was entitled to have clearly manifested to him that an action under the general equity powers was intended rather than an action of furtherance of suppression of prostitution under the penal statute.

█ It follows from all of the foregoing that the judgment of the district court is erroneous, and should be reversed, and the cause remanded, with directions to dissolve the injunction heretofore issued in the case, and to dismiss the complaint.

It is so ordered.

McGHEE, COMPTON and KIKER, JJ., concur.

SADLER, J., dissenting.

SADLER, Justice (dissenting).

District Court Rule No. 52(b) (7) provides:

"The decision shall be contained in a single document; provided, that an amended or supplemental decision may be filed in the cause prior to entry of judgment; and provided further, that findings or conclusions not embraced in the single document herein ordered, even though appearing elsewhere in the record, will be disregarded; *but where the ends of justice require the cause may be remanded to the District Court for the making and filing of proper findings of fact and conclusions of law.*" (Emphasis supplied.)

The findings in this case are adopted in the following language by the court:

"The Court adopts as its own the Plaintiff's Requested Findings of Fact and Conclusions of Law and all Requested Findings of Fact and Conclusions of Law of the defendant inconsistent therewith are hereby denied."

The Order appealed from recites:

"That the Court adopts as its own the Plaintiff's Requested Findings of Fact and Conclusions of Law filed in this cause and which are hereby made a part of this Order as though set forth fully herein, and Defendant's Findings of Fact and Conclusions of Law not inconsistent therewith."

Neither of said orders is a compliance with the quoted rule, set out above. I find nothing in this record so much as suggesting that the ends of justice require a re-

manding of the cause to the district court for the purpose of "the making and filing of proper findings of fact and conclusions of law." I would affirm.

Accordingly, I dissent.